**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| AMY BURNETT,<br>an individual, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | Case No. 3:25-CV-00600 |
| v. | * | District Judge Eli J. Richardson |
| | * | Magistriate Judge Alistair Newbern |
| BELL ROAD APARTMENT<br>PARTNERS, LLC,<br>a Delaware limited liability company, | * | |
| | * | |
| | * | |
| | * | |
| HUMPHREYS & PARTNERS<br>ARCHITECTS, INC.,<br>a Texas corporation, | * | |
| | * | |
| | * | |
| | * | |
| 2ND WAVE DEVELOPMENT, LLC,<br>a Florida limited liability company, | * | |
| | * | |
| | * | |
| RAGAN-SMITH-ASSOCIATES, INC.,<br>a Tennessee corporation, | * | |
| | * | |
| | * | |
| BACAR CONSTRUCTORS, INC.,<br>a Tennessee corporation, | * | |
| | * | |
| | * | |
| | * | |
| Defendants. | * | |

**SECOND AMENDED COMPLAINT**

Comes now Plaintiff, AMY BURNETT ("Plaintiff"), by and through counsel, and alleges as follows:

**I.**
**INTRODUCTION**

1.     Plaintiff brings this action against Defendants, BELL ROAD APARTMENT PARTNERS, LLC, HUMPHREYS & PARTNERS ARCHITECTS, INC., 2ND WAVE DEVELOPMENT, LLC, RAGAN-SMITH-ASSOCIATES, INC., and BACAR

CONSTRUCTORS, INC.. ("Defendants"), alleging violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (FHA), 42 U.S.C. §§ 3601-3619 with regard to lack of accessibility at the Maxwell apartments (the "Property").

2.      Plaintiff seeks monetary, declaratory and injunctive relief arising from violations of the accessibility requirements of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (FHA), 42 U.S.C. § 3601-3619. This statute requires that certain apartment complexes built for first occupancy after March 13, 1991 be designed and constructed with accessible and usable features for people with disabilities.

3.      Plaintiff, AMY BURNETT, is a handicapped individual that uses a wheelchair. Plaintiff brings this civil rights action against Defendants for failing to design and/or construct apartments with accessible and usable features for people with disabilities as required by the FHA. Defendants' apartment complex, Maxwell, which is a multi-family dwelling, has numerous barriers to access. Therefore, Plaintiff seeks a declaration that Defendants' apartment complex violates federal law and an injunction requiring Defendants to comply with the requirements of the FHA.

4.      The Defendants' violations of the FHA have thwarted Congressional efforts to eradicate housing discrimination against people with disabilities and rendered units and/or facilities unavailable to people with disabilities. Enforcement of the FHA against Defendants is necessary because of the extensive nature of the civil rights violations at apartments designed, constructed and/or owned by Defendants.

## II.
## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and

42 U.S.C. § § 3613(a). Plaintiff asserts no state law claims.

6.     Plaintiff's claims asserted herein arose in this judicial district and Defendants do substantial business in this judicial district.

7.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## III.
## PARTIES

8.     Plaintiff, AMY BURNETT, is and, at all times relevant hereto, was a resident of the  State of Tennessee. Plaintiff is and, at all times relevant hereto, has been legally  handicapped and is therefore a member of a protected class under the FHA.

9.     Defendant, BELL ROAD APARTMENT PARTNERS, LLC, is a Delaware limited liability company and the owner of the real property and improvements for property municipally known as 1500 Bell Rd., Nashville, Tennessee 37211, and further identified by the Davidson County Tax Assessor as parcel identification number 16200011300. Upon information and belief, Defendant is an owner and participated in the design and construction of the Property.

10.     Defendant, HUMPHREYS & PARTNERS ARCHITECTS, INC, served as the architect of record and prepared the design documents of the development of the Project, according to information provided in discovery.

11.     Defendant, 2ND WAVE DEVELOPMENT, LLC, served as the developer for the property and was instrumental to the design and construction of the property, according to information provided in discovery.

12.     Defendant, RAGAN-SMITH-ASSOCIATES, INC., served as the civil engineer and the landscape architect for the project and prepared the civil engineer and landscape design

for the property, according to information provided in discovery.

13.     Defendant, BACAR CONSTRUCTORS, INC., served as the general contractor for the property and provided the construction plans for the property, according to information provided in discovery.

## IV.
## STATUTORY BACKGROUND

A.     **The FHA**

14.     Congress enacted the FHA design and construction accessibility requirements as part of a comprehensive revision of the FHA to prohibit discrimination on the basis of disability. The debates and legislative history of the FHA reflect Congressional findings that a person using a wheelchair or other mobility aid is just as effectively excluded from the opportunity to live in a particular dwelling by steps or thresholds at building or unit entrances and by too narrow doorways as by a posted sign saying, "No Handicapped People Allowed." In considering the 1988 disability amendments to the FHA, Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public accommodations accessible to and useable by people with disabilities. HR. REP. NO. 100-711, at 25(1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2186.

15.     In response to Congressional findings, the FHA mandated that every multi-family apartment building containing four (4) or more units and built for first occupancy after March 13, 1991 ("covered multi-family dwellings") be subject to certain design and construction requirements. Congress specifically rejected the approach of requiring only a specific number or percentage of units be fully accessible. Instead, Congress decided that all covered multifamily dwellings units must comply with the Act's design and construction requirements. All ground floor units must comply with the following requirements, as must all units served by an elevator:

a.      Public-use and common-use areas that are readily accessible to, and usable by, people with disabilities;

b.      Doors into and within covered units that are sufficiently wide to allow passage by people in wheelchairs;

c.      An accessible route into and through the dwelling;

d.      Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

e.      Reinforcements in bathroom walls that allow for the later installation of grab bars; and

f.      Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

16.      Congress viewed the accessibility requirements imposed by § 3604(f)(3)(C) as "modest." It did not intend to impose "unreasonable requirements" or a "standard of total accessibility," but rather saw the "basic features" required by § 3604(f)(3)(C) as amounting to "minimal standards" that would be "easy to incorporate in housing design and construction." Furthermore, according to the House Report, the § 3604(f)(3)(C) requirements could be met without making new multi-family housing "look unusual" and without "significant additional costs."

17.      Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated final FHA design and construction regulations in January 1989, see 24 C.F.R § 100.205 (2008), and published the final Fair Housing Act Accessibility Guidelines on March 6, 1991 (hereinafter "FHAAG") which incorporates the requirements of the American National Standards Institute for buildings and facilities providing accessibility and usability for physically handicapped people, A117-I-1986 (hereinafter "ANSI"),

see 56 Fed. Reg. 9472 (Mar. 6, 1991), and the Fair Housing Act Design Manual in August 1996, which was revised in August 1998.

18. Defendants failed to comply with the FHAAG and ANSI in the design and construction of the Property. It also failed to comply with any other recognized objective FHA or ADA standard for accessibility.

19. The FHA expressly provides for private enforcement by an "aggrieved person" defined as a person who claims to have been injured by a discriminatory housing practice or believes that such person will be injured by a discriminatory housing practice. 42 U.S.C. § 3613(i)(1)(A) (private right of action); 42 U.S.C. § 36021. (defining aggrieved person). In fact, the Supreme Court has stated that private enforcement is the primary method of obtaining compliance with the FHA. *Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205, 209 (1977).

20. The FHA also provides that a private plaintiff may be awarded actual and punitive damages, as well as a "permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." 42 U.S.C. § 3613 (c)(1). Thus, under the FHA, the court may order injunctive relief to remediate the discriminatory barriers at the Property.

21. Notably, the Supreme Court has recognized that discrimination violative of the FHA injures not only the members of a protected class, but also other tenants at an apartment complex who are denied the benefits of associating with those persons. *Trafficante*, 409 U.S. at 209-10. Thus, private enforcement benefits not only those against whom discrimination is directed, but the other residents. *Id*. at 211.

**V.**
**FACTUAL BACKGROUND**

**A.**     **The Property**

22.     The Maxwell is an apartment complex located at 1500 Bell Rd. (the "Property"). The Property consists of approximately 3 6 2  total  units in 14 buildings. The apartment complex is not served by elevators.

23.     The Property described above was designed and constructed for first occupancy after June 2023.

24.     The Property contains "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604 (f)(7).

25.     The covered multifamily dwellings at the Property are subject to the requirements of 42 U.S.C. § 3604 (f). These include all ground floor units and units served by elevators.

26.     Defendants' failure to design and construct the Property in compliance with Section 3604(f)(3)(C) occurred during the design and construction of the Property and continued until all units were leased.

**B.**     **Plaintiff's Investigation.**

27.     Plaintiff was researching apartments in the Nashville area. Plaintiff visited the Property on or about June of 2024,  and looked at one  or  more  units. Plaintiff observed that there were accessibility  barriers that would interfere with her ability to access and use the facilities.

28.     Plaintiff is searching for a new apartment to rent in the Nashville area because she desires a more up-scale place to live. She currently rents in the Nashville area.

29.     The existence of barriers and the lack of accessible features deterred Plaintiff from renting an apartment at the Property.

30.     Specifically, Plaintiff noted that she was unable to rent an apartment from Defendants because she would not be able to independently use the apartment, including the features in the unit and the common areas.

31.     Due to a car wreck, Plaintiff is a T4 paraplegic, meaning she is paralyzed from the diaphragm down. She requires the use of a wheelchair.

32.     As a result of Defendants' non-compliance with the FHA, Plaintiff, unlike persons without disabilities, cannot independently use the features of Property.

33.     Defendants' apartments lack various mandatory elements required by the FHA, to make the apartments accessible and usable for people with disabilities.

34.     As a handicapped individual and advocate for same, Plaintiff is concerned whether apartments are accessible and useable for people with disabilities.

35.     In addition, the barriers at the Property will interfere with residents associating with disabled persons who encounter the barriers at the Property. Disabled relatives and visitors to tenants will encounter the barriers and be deterred from accessing the Property.

36.     Because the barriers at the Property are structural, it is inevitable that disabled persons visiting the Property will encounter them, thereby causing them the very injuries sought to be prevented by the FHA's design and construction requirements. The barriers at the Property present a continuing and ongoing pattern and practice of discrimination against disabled persons. Such discrimination creates a presumption that injunctive relief to remedy the discrimination is necessary. *United States v. Balistrieri*, 981 F.2d 16, 934 (7th Cir. 1992).

37.     Absent injunctive relief to remedy the barriers, they will exist in perpetuity at the Property.

38.     Without injunctive relief, Plaintiff and others will continue to be unable to fully access and use the Property in violation of her rights under the FHA. Plaintiff expects to return to the Property once it has been remediated.

39.     Plaintiff has been injured by the Defendants' discriminatory practices and failure to design and/or construct apartments that are constructed with accessible and useable

features for people with disabilities as required by the FHA. These injuries include experiencing discrimination and being deterred from renting at the Property. These blatant violations effectively communicate that people with disabilities are not welcome in the "Property."

40.     Plaintiff is currently in the market for an apartment in the area of the subject property. Plaintiff intends to return to the subject property and other rental properties nearby to pursue a potential rental of an apartment.

41.     Without injunctive relief, Plaintiff and others will continue to be unable to fully access and use the Property in violation of their rights under the FHA.

**C.      FHA Violations.**

42.     The Defendants' violations of 42 U.S.C. § 3604(f)(3)(C) at the Property include, but are not limited to, those outlined below. These allegations represent just some of the  evidence of the Defendants' failure to design and construct covered units and the public and  common use areas in accord with 42 U.S.C. §3604(f)(3)(C) and are not intended as an exhaustive  inventory of such violations.

43.     Defendants have failed to design and/or construct public and common-use areas that are readily accessible to and usable by people with disabilities in compliance with 42 U.S.C. § 3604(f)(3)(C)(i) and 24 C.F.R. §100.205(c)(1) (2008). For example:

        a.      The booths in the lobby are elevated and do not provide access for individuals with disabilities.

        b.      Metal signage is not provided at the accessible parking space near the trash compactor, violating accessibility requirements.

        c.      The entrance gate to the Dog Park does not provide 18" inches of latch side clearance at the pull side, making it inaccessible for individuals with disabilities.

        d.      There is no accessible route and clear floor space provided for at least one

dog waste station, preventing accessibility for individuals with disabilities.

e.     The entrance gate to the Dog Park does not provide 18" inches of latch side clearance at the pull side, making it inaccessible for individuals with disabilities.

f.     There is no accessible pedestrian route from the public right-of-way [street] in front of this site to the exterior entrances at the facility including the leasing office.

g.     Near the southwest corner of Building 2 there is a section of the pedestrian walkway that has an average run slope of approximately 5.8% for approximately 60 feet resulting in a change of level of approximately 41.5 inches, but there are no handrails and there is not a level landing when the change of level reached 30 inches.

h.     Between Building 8 and Building 9 there is a walkway that has settled at a utility cover resulting in excessive abrupt changes of level, and excessive cross slope in two sections of the concrete walkway.

i.     Between Building 8 and Building 9, the walkway is an excessive abrupt change of level in the walkway.

j.     A pedestrian walkway just north of Building 10 has an average run slope of 6% over a ramp length of approximately 13.5 feet, resulting in a vertical change of level of approximately 9.6 inches, but there are no handrails for the ramped portion of the walkway.

k.     The pedestrian ramps connecting Buildings 1200 and 1300 to the associated garages have ramps exceeding 6 inches in vertical change but no handrails.

l.     The ramp to the trash compactor has a handrail but there is no edge protection at the bottom of the handrail.

m.     There are no accessible pedestrian routes to the life preservers at the pools.

n.      Vehicle were observed overhanging the accessible routes near the leasing office and between apartment buildings and amenities or other apartment buildings.

o.      The pile height of the synthetic turf [carpet] at the pool, patio, and pet park amenities is too high.

p.      The accessible parking area for the clubhouse/leasing office is not located on the shortest accessible route to the front/main public entrance.

q.      The accessible parking area for apartment Buildings 3 and 6 are not located on the shortest accessible pedestrian route to the entrance near the Type A accessible apartments in these buildings.

r.      Several parallel curb ramps have excessive run slope on one or both of the opposing ramps.

s.      A pedestrian gate on the west side of the clubhouse/pool area has excessive surface slope in the maneuvering spaces on both sides of the gate, the exterior/pull side of the gate has limited maneuvering space on the latch side, and the interior/push side of the gate has limited maneuvering space on the latch side.

t.      Near the gate described in paragraph 43(s) above is another pedestrian gate on the west side of the Property and near the vehicle entry/exit point on the west side that has compromised maneuvering space on both sides of the gate.

u.      A pedestrian swinging/hinged gate on the north side of the pool area has excessive surface slope in the maneuvering spaces on both sides of the gate.

v.      The pet park gates have latches mounted more than 48 inches above the adjacent floor.

w.      None of the exterior gates have a smooth surface within 10 inches of the adjacent floor on the push side of the gate.

x.    Neither of the pools has an accessible means of entering or exiting the pool.

y.    Some exterior pedestrian doors with hydraulic door closers close too quickly.

z.    The Clubhouse lounge exterior pedestrian door threshold has excessive threshold height exceeding ½ inch.

aa.   At the Clubhouse public toilet rooms, the force required to open the doors exceeds 5 pounds and the doors close automatically in less than 5 seconds.

bb.   The left sauna door maneuvering space is limited on the latch side.

cc.   The floor at the door threshold for the left sauna has excessive abrupt change of level on the inside of the threshold.

dd.   The wall-mounted fire extinguisher located near the clubhouse patio protrudes more than 4 inches from the wall and is not within the 27-inch area of cane detection for protruding objects.

ee.   The pet park upper water fountains protrude more than 4 inches from the post and are not within the 27-inch area of cane detection for protruding objects.

ff.   The wall-mounted light fixtures in the clubhouse lounge protrude more than 4 inches from the adjacent wall at the bottom of the fixtures and are not above the 80-inch limit for protruding objects.

gg.   The emergency shutoff switch at the waste compactor doors is installed more than 48 inches above the adjacent floor.

hh.   At the Cowork Lounge and Conference Room, the drink dispenser is installed more than 48 inches above the adjacent floor.

ii.   At the Fitness Room Meditation Room, drink dispensers are installed

more than 48 inches above the adjacent floor.

jj.     In the Dog Wash/Pet Spa room, the faucets and spray arms are mounted more than 46 inches above the adjacent floor.

kk.     The food service counter surface in the clubhouse Cowork Lounge and Conference room is more than 34 inches in height above the adjacent floor.

ll.     The food service counter surface in the Fitness Center Meditation room is more than 34 inches in height above the adjacent floor.

mm.     In the Piano Café the main dining counter/surface is more than 34 inches above the adjacent finished floor for the full length of the surface, and has limited toe space clearance below the dining counter/surface.

nn.     In the Piano Café the wall-mounted dining counter/surface has limited toe space clearance below the dining counter/surface.

oo.     In the Piano Café the kitchenette counter is more than 34 inches above the adjacent finished floor for the full length of the surface.

pp.     The route to the Conference Room that runs through the Cowork Lounge is too narrow on both sides of the large/main table in the lounge due to proximity to the loose round tables and the dining booth installations.

qq.     The exposed edges of the carpet in the leasing center and clubhouse lounge are not fastened to the floor, the height of the carpet is too high, and the carpet does not have trim along the entire length of the exposed edge. The exposed edges of the carpet in the clubhouse lounge are not fastened to the floor and the carpet does not have trim along the entire length of the exposed edge.

rr.     The front/main entrance to the leasing office and clubhouse does not have an accessible sign with the International Symbol of Accessibility (ISA).

ss.     The exterior doors on the west side for the mail center and fitness center are near the accessible parking area but these entrances do not have directional signs to the front/main entrance door that is accessible to members of the public.

tt.     Some tactile entrance signs at the clubhouse do not have braille components.

uu.     The west-side exterior signs identifying the Mail Center and Fitness Center are not mounted on the closest wall to the latch side of the exterior doors, and the surface of the ground below the sign is not part of an accessible route.

44.     Defendant has failed to design and/or construct usable bathrooms and kitchens such that an individual in a wheelchair can maneuver about the space in compliance with 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) and 24 C.F.R. § l00.205(c)(3)(iv) (2008). For example, the interiors of units at the Property:

a.     In the Men's and Women's toilet/bathing/locker rooms, all toilet room and shower grab bars are mounted too high above the adjacent floor.

b.     In the Women's shower/locker room, a shelf/tray is installed too close to a grab bar in the shower intended to be accessible.

c.     In the Men's and Women's showers that are intended to be accessible, some of the grab bars do not extend to within 6 inches of the corners of the showers.

d.     In the Men's and Women's public toilet rooms the accessible toilets are approximately 18.5 inches from the side wall to the centerline of the toilets.

e.     In the Men's and Women's accessible toilet rooms, the toilet paper dispensers are mounted less than 7 inches from the front of the toilet bowl.

f.     The Men's and Women's bathing/locker rooms do not have signs for the accessible shower rooms to indicate the rooms are intended to be accessible.

g.     In the Men's and Women's locker rooms the vanity mirrors are mounted too high above the adjacent floor.

h.     The vanity counter in the Men's bathing/locker room is installed with slightly less than 27 inches of knee space below the counter.

i.     Neither of the Men's or Women's shower rooms intended to be accessible have seats installed in the shower space.

j.     In each bathing/locker room shower room that is intended to be accessible, the shower hand spray installation is not located on the rear wall.

k.     There are no benches in the Men's or Women's locker rooms.

l.     In Type A and B apartments with showers that have a shower door installation, the width of the shower door is too narrow.

m.     In Type A and B apartments with showers that have a shower door installation, the shower door threshold is too high.

n.     Grab bars are mounted too high in the showers and at the accessible toilets in the Type A dwelling units.

o.     The Type A dwelling units 404 and 418 bathroom showers do not have seats.

p.     The Type A dwelling units 404 and 418 bathroom showers do not have a depth measurement of 30 inches, minimum.

q.     In Type A dwelling unit 404 the accessible toilet flush handle is located on the wrong side of the toilet.

r.     The bathroom lavatory mirrors in the Type A apartments inspected are installed more than 40 inches above the adjacent floor to the bottom edge of the reflecting surface.

s.      In the Type A apartments, the lavatory/sink installations in the bathrooms intended to be accessible do not have a clear space with knee/toe clearance, and the cabinetry is not removable.

t.      The space in Type B apartments 116 and 1131 kitchens is less than required to maneuver about the kitchen.

u.      In the Type A apartments, the kitchen sinks do not have a clear space for a forward approach or knee/toe clearance, and the cabinetry is not removable.

45.      Defendants have failed to design and/or construct light switches, electrical outlets, thermostats and other environmental controls in accessible locations in compliance with 42 U.S.C. § 3604 (f)(3)(C)(iii)(II) and 24 C.F.R. § 100.205(c)(3)(ii) (2008). For example:

a.      The circuit breaker panel is located higher than 48" inches above the finished floor, making it inaccessible to individuals with disabilities.

b.      A coat hook and some shelving in the Type A apartments were observed installed more than 48 inches above the adjacent floor.

46.      Defendants have failed to design and/or construct accessible routes and interior doors in compliance with 42 U.S.C. § 3604 and 24 C.F.R. § 100.205. For example:

a.      In Type B apartment 1002 the width of the interior single swinging/hinged pedestrian entry/exit door for the second bedroom is less than 31.75 inches.

b.      In Type A and B apartments the double door installations are typically too narrow in door opening width.

c.      The door maneuvering space is compromised at several locations in the apartments.

47.      Further, by failing to provide the accessible and useable features required by 42 U.S.C. § 3604(f)(3)(C) at the Property for people with physical disabilities, including but not

limited to those outlined above, Defendants have violated 42 U.S.C. § 3604(f)(1) and/or have discriminated against them in the terms, conditions or privileges of the rental of dwellings in violation of 42 U.S.C. § 3604(f)(2).

48.     Plaintiff was injured by these violations at the property because she was deterred from renting an apartment from the Defendants, and because she was unable to independently use the features of the units and common areas.

## VI.
## CAUSE OF ACTION
## For violation of the FHA, 42 U.S.C. § 3601, et seq.

49.     The allegations in the preceding paragraphs are incorporated by reference.

50.     The Property contains residential apartment units that are "dwelling[s]" within the meaning of 42 U.S.C. § 3602(b).

51.     Plaintiff has standing to sue as an "aggrieved person" as defined in 42 U.S.C. § 3602(i) which includes any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur.

52.     At the Property, all ground-floor units and upper floor units served by elevators not in townhomes are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(A), were built for first occupancy after March 13, 1991, and are subject to the design and construction requirements set forth in 42 U.S.C. § 3604(f)(3)(C) of the FHA. The public- and common-use areas of the Property are also subject to the design and construction requirements of 42 USC. § 3604(f)(3)(C).

53.     Through the actions and inactions described above, the Defendants have:

        a.      discriminated in the rental of, or otherwise made unavailable or denied, dwellings to persons because of their disabilities in violation of 42 U.S.C. § 3604(f)(1);

b. discriminated against persons because of their disabilities in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2); and

c. failed to design and construct dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, 24 C.F.R. Part 100.205 (2008).

54. Defendants' discriminatory conduct has damaged Plaintiff.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

a. A Declaratory Judgment that at the commencement of this action Defendants are in violation of the specific requirements of the FHA, described above, and the relevant implementing regulations of the FHA;

b. An injunction, pursuant to 42 U.S.C. § 3613(c)(l)(a), enjoining Defendants, their officers, directors, employees, agents, successors, assigns and all other persons in active concert or participation with any of them, both temporarily during the pendency of this action, and permanently from:

1. with regard to the Property, failing or refusing to bring the covered dwelling units and the public use and common use areas into compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), the Americans with Disabilities Act ("ADA") and the applicable regulations; to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court; and to perform or allow such other acts as may be necessary to effectuate any judgment of this Court against them; failing or refusing to design and construct any covered multifamily

dwellings in the future in compliance with 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations; and

 2. failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations; and

 3. failing or refusing to take such steps as will eliminate, to the fullest extent practicable, the lingering effects of the Defendant's unlawful housing practices.

c. An injunction enjoining Defendants from failing or refusing to permit the survey of any of their covered properties that were designed and/or built by the Defendants and any retrofits ordered by the Court to be made at such property, to also comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the Defendants;

d. Award such damages as would fully compensate Plaintiff for her injuries incurred as a result of the Defendants' discriminatory housing practices and conduct, pursuant to 42 U.S.C. § 3613(c)(1)(a);

e. Award such punitive damages against Defendants as is proper under law, pursuant to 42 U.S.C. § 3613(c)(1)(a);

f. Payment of costs of suit;

g. Payment of reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. § 3613(c)(2), and other principles of law and equity; and

h. The provision of whatever other relief the Court deems just, equitable and appropriate.

# VIII.
## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

 Dated: November 13, 2025.

                              Respectfully Submitted,

                              */s/ Rebecca Hutto*
                              Rebecca Hutto, TN Bar No.
                              39252
                              Wampler, Carroll, Wilson,
                              and Sanderson, PLLC
                              208 Adams Avenue
                              Memphis, TN 38103
                              Telephone: 901-523-1844
                              Email:rebecca@wcwslaw.c
                              om
                              ATTORNEY FOR PLAINTIFF

**DEFENDANTS TO BE SERVED:**

BELL ROAD APARTMENT PARTNERS, LLC
c/o CAPITOL CORPORATE SERVICES, INC.
992 DAVIDSON DR. STE. B.
Nashville, TN 37205

HUMPHREY & PARTNERS ARCHITECTS, INC.
C/O CORPORATION SERVICE COMPANY
2908 POSTON AVE
NASHVILLE, TN 37203

2ND WAVE DEVELOPMENT LLC
C/O FANELLI LAW FIRM, PA
180 FOUNTAIN PARKWAY N
SUITE 100
ST. PETERSBURG, FL 33716

RAGAN-SMITH-ASSOCIATES, INC.
315 WOODLAND ST
NASHVILLE, TN 37206

BACAR CONSTRUCTORS, INC.
C/O CORPORATION SERVICE COMPANY
2908 POSTON AVE
NASHVILLE, TN 37203