IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

AMY BURNETT,

    Plaintiff,

v.    No. 3:25-CV-00600

BELL ROAD APARTMENT PARTNERS, LLC,
HUMPHREYS & PARTNERS ARCHITECTS, INC.,
2ND WAVE DEVELOPMENT, LLC,
RAGAN-SMITH ASSOCIATES, INC., and
BACAR CONSTRUCTORS, INC.,

    Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANTS BELL ROAD APARTMENT PARTNERS, LLC AND 2ND WAVE DEVELOPMENT, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

**COME NOW**, Defendants Bell Road Apartment Partners, LLC ("Bell Road") and 2nd Wave Development, LLC ("2nd Wave," and collectively, "Defendants"), by and through undersigned counsel and pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully submit this Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Standing and Failure to State a Claim Upon Which Relief Can be Granted as follows:

## I.
## FACTUAL BACKGROUND

Bell Road is the owner of a multifamily apartment complex known as The Maxwell and located at 1500 Bell Road, Nashville, Tennessee 37211 (the "Property"). (Doc. 38, ¶ 9). 2nd Wave served as the developer of the Property. (Doc. 38, ¶ 11). Plaintiff Amy Burnett's

1

("Plaintiff") Second Amended Complaint alleges violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. §§ 3601–3619 due to the alleged lack of accessible features at the Property. (Doc. 38, ¶¶ 1, 42–48).

In her Second Amended Complaint, Plaintiff seeks monetary, declaratory, and injunctive relief from Defendants' alleged violations of the accessibility requirements of the FHA. (Doc. 38, ¶ 2). Plaintiff alleges that she is a "T4 paraplegic, meaning she is paralyzed from the diaphragm down." (Doc. 38, ¶ 31). And she alleges that she "requires the use of a wheelchair." (Doc. 38, ¶ 31). Plaintiff alleges that because she is handicapped, she is a member of a protected class under the FHA. (Doc. 38, ¶ 8). Plaintiff alleges that the FHA provides for a private right of action by an "aggrieved person" as defined under the FHA. (Doc. 38, ¶ 19).

Plaintiff alleges that she was "researching" apartments in the Nashville area and that she "visited the Property on or about June of 2024 and looked at one or more units." (Doc. 38, ¶ 27). In doing so, Plaintiff alleges that she "observed that there were accessibility barriers that would interfere with her ability to access and use the facilities." (Doc. 38, ¶ 27). Plaintiff then alleges that the "existence of barriers and lack of accessible features deterred Plaintiff from renting an apartment at the Property." (Doc. 38, ¶ 29). Plaintiff also alleges that "[a]s a handicapped individual and advocate for same, [she] is concerned whether apartments are accessible and usable for people with disabilities." (Doc. 38, ¶ 34). Finally, Plaintiff alleges that she "has been injured by the Defendants' discriminatory practices and failure to design and/or construct apartments that are constructed with accessible and usable features for people with disabilities as required by the FHA." (Doc. 38, ¶ 39). While Plaintiff makes the conclusory allegation that she has been

discriminated against, she fails to allege or describe, in any manner, any concrete and particularized injuries.

Notably, in the Complaint and First Amended Complaint, Plaintiff only identified five (5) violations of 42 U.S.C. § 3604(f)(3)(C)(i) which she alleges to have "observed" during her visit to the Property in June 2024. (Doc. 1, ¶ 36; Doc. 21, ¶ 44). However, in the Second Amended Complaint, Plaintiff has added an additional forty-two (42) violations of 42 U.S.C. § 3604(f)(3)(C)(i), amounting to a total of forty-seven (47) alleged violations, that she purportedly "observed" at the Property. (Doc. 38, ¶ 43). Plaintiff also included an additional twenty-one (21) alleged violations of 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) and allegations that Defendants failed to design and/or construct accessible routes and interior doors, none of these alleged violations were present in Plaintiff's Complaint or First Amended Complaint. (Doc. 38, ¶¶ 44, 46).

## II.
## LAW AND ARGUMENT

Article III of the United States Constitution requires that a plaintiff seeking to invoke federal court jurisdiction must have sustained an injury in fact that is "concrete and particularized" and not "conjectural and hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–339 (2016). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* The plaintiff, as the party invoking federal court jurisdiction, has the burden of establishing standing, and at the pleading stage, the plaintiff must clearly allege facts demonstrating that she has standing. *Id.*

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff's obligation at the pleading stage to provide the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a

3

cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). While a court must take the allegations of a complaint as true when considering a motion under both Rule 12(b)(1) and Rule 12(b)(6), the Supreme Court has established that "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663. In *Iqbal*, the Supreme Court stated that in considering a motion to dismiss, the court should determine which allegations in the complaint can be classified as "legal conclusions" and disregard them for purposes of deciding the motion. *Id.* at 678.

To survive a defendant's motion to dismiss, a plaintiff's complaint "must contain sufficient factual matters to '<u>state a claim to relief that is plausible on its face</u>.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (emphasis added). Although in reviewing a defendant's motion to dismiss, the Court must "take all of the factual allegations in the complaint as true . . .", <u>the Court is "not bound to accept as true a legal conclusion couched as a factual allegation</u>." *Id.* (emphasis added).

Defendants contend that Plaintiff's Second Amended Complaint, on its face, fails to sufficiently allege that Plaintiff has suffered any injury in fact, that is concrete and particularized, which is necessary to establish Article III standing, ultimately failing to state any plausible claim upon which relief can be granted under the FHA. Rather, Plaintiff's allegations regarding an injury are conclusory or relate to a potential injury to others. As such, Defendants assert that Plaintiff's Second Amended Complaint must be dismissed, as she lacks standing to invoke this Court's jurisdiction and fails to state a claim upon which relief can be granted.

4

### A. Plaintiff's Second Amended Complaint Fails to Plead Sufficient Facts That Would Establish Standing to Bring Suit Against Defendants as Required Under Article III of the United States Constitution.

Plaintiff's Second Amended Complaint, on its face, fails to set forth any factual allegations that would establish Plaintiff has standing to bring suit against Defendants. Plaintiff's alleged status as a handicapped person who visited the Property and allegedly observed accessibility barriers is not sufficient to confer standing. "Because Article III standing is a jurisdictional requirement that cannot be waived, it may be brought up at any time in the proceeding." *Fair Hou. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*, 124 F. 4th 990, 992 (6th Cir. 2025).

Article III of the United States Constitution confines the jurisdiction of federal courts to "Cases" and "Controversies." *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 378 (2024). Article III standing is a "bedrock Constitutional requirement" for a federal court to hear a dispute. *Id.* For a plaintiff to have the right to assert a cause of action in a federal court, "the plaintiff cannot be a mere bystander, <u>but instead must have a 'personal stake' in the dispute</u>." *Id.* (emphasis added).

Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc*, 578 U.S. at 338. The doctrine ensures that federal courts do not exceed their authority and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* The law of Article III standing further serves to prevent the judicial process from being used to usurp the powers of the political branches. *Id.* "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

The "'irreducible constitutional minimum' of standing consists of three elements: the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc*, 578 U.S. at 338 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 560 (2013)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

In the case at hand, Plaintiff alleges that she is entitled to assert a private enforcement action against Defendants under Section 3613 of the FHA as an "aggrieved person." (Doc. 38, ¶ 19). An "aggrieved person" is defined under the FHA as a person who "claims to have been injured by" a discriminatory housing practice, or a person who "believes that such person will be injured by a discriminatory housing practice *that is about to occur*." 42 U.S.C. § 3602(i) (emphasis added). While Section 3613 of the FHA provides a private right of action to an "aggrieved person," this private right of action does not dispense with the requirement that a Plaintiff must have sustained, and sufficiently plead, an injury in fact based on the alleged FHA violation in order to establish standing under Article III of the United States Constitution. *See Spokeo*, 578 U.S. at 339.

Injury in fact is a constitutional requirement, and "'[i]t is settled that <u>Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing</u>.'" *Id.* (quoting *Raines*, 521 U.S. at 820) (emphasis added). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–560 (1992)). A 'particularized' injury is one that "must affect the plaintiff in a personal and individual way." *Id.* And a 'concrete' injury "must be 'de facto'; that is, it must actually exist" *Id.* at 340. It must be

real and not abstract. *Id.* While Congress has the authority to define injuries and chains of causation that will give rise to a cause of action, Congress's role in defining such harms:

> does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. *Article III standing requires a concrete injury even in the context of a statutory violation.*

*Id.* at 341 (emphasis added). "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021). "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* Under Article III, "an injury in law is not an injury in fact." *Id.* at 427. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* A plaintiff failing to allege an injury in fact that is both "concrete and particularized" and that is "actual or imminent" indisputably lacks standing under Article III. *Lujan*, 504 U.S. at 560–61.

In the instant case, Plaintiff's alleged status as meeting the definition of a handicapped person under the FHA does not automatically confer Article III standing. Rather, Plaintiff must also plead that she has sustained an injury in fact that is "concrete and particularized" and that is "actual or imminent." Further, Plaintiff must do more than simply allege that she was "injured" by the alleged discriminatory practices.

The pleading standard under Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at

7

555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

In the case at hand, Plaintiff's Second Amended Complaint does not allege any injury in fact. Plaintiff alleges that she was "researching" apartments and "visited" the Property. (Doc. 38, ¶ 27). Plaintiff alleges that she "observed" alleged accessibility barriers. (Doc. 38, ¶ 27). And Plaintiff simply claims that she was "injured by the Defendants' discriminatory practices . . ." (Doc. 38, ¶ 39). However, the Second Amended Complaint is utterly devoid of any specific allegations that she sustained an injury in fact caused by the alleged accessibility barriers.

For example, the Second Amended Complaint contains no allegations that the accessibility barriers prevented her from touring or accessing any areas of the Property or visiting any persons at the Property. In fact, the Plaintiff's allegations include observations she made in the lobby and the dog park. (Doc. 38, ¶ 43). Plaintiff alleges that the booths in the lobby are elevated and do not provide access for individuals with disabilities but does not allege that the purported barrier precluded or impacted her ability to use the facility or even that she attempted to use the facility. (Doc. 38, ¶ 43). Plaintiff alleges that the entrance to the dog park does not provide eighteen inches of latch side clearance at the pull side but does not allege that she was precluded from using the dog park or even allege that she attempted to use the dog park of that she had a dog with her. (Doc. 38, ¶ 43). Further, Plaintiff alleges that there is no accessible route and clear floor space provided for at least one dog waste station but does not allege that she attempted to use a dog waste station or even allege that the purported violation caused her injury. (Doc. 38, ¶ 43). Nowhere does

8

Plaintiff allege that she was precluded from accessing these areas, that she was precluded from using these areas, or that she somehow was physically (or even psychologically) injured as result of alleged accessibility barriers in any area of the Property.

Furthermore, in Plaintiff's Complaint and First Amended Complaint, Plaintiff identifies approximately five (5) alleged violations of 42 U.S.C. § 3604(f)(3)(C)(i) which she purports to have "observed" during her visit to the Property in June 2024. (Doc. 1, ¶ 36; Doc. 21, ¶ 44). Despite not returning to the Property after her visit in June 2024, or even alleging that she did so in her Second Amended Complaint, Plaintiff has now expanded her list of alleged FHA violations, adding over sixty (60) newly "observed" violations. (Doc. 38, ¶¶ 43, 44, 46). However, the additional sixty (6) alleged violations that were not raised in Plaintiff's Complaint or First Amended Complaint were only added to Plaintiff's Second Amended Complaint after Plaintiff's expert conducted a Rule 34 inspection of the Property on October 27th and 28th. (Doc. 27). Plaintiff's newly "observed" violations cannot support Article III standing because Plaintiff could not have personally encountered or observed them. This dramatic expansion of alleged violations underscores Plaintiff's attempt to act as an enforcer of broad FHA compliance through private action and expert inspections, rather than an individual seeking redress for a concrete and particularized injury.

Moreover, Plaintiff's Second Amended Complaint is devoid of any allegation that she was denied an opportunity to rent any apartment or that she raised any accessibility concerns to management which were ignored. Plaintiff does not even allege that she submitted or sought a rental application. Rather, it is evident from the face of the Second Amended Complaint that the Plaintiff is a "tester." *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) ("'testers"

are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful . . . practices.").

In *Havens Realty Corp. v. Coleman*, the United States Supreme Court considered the issue of "racial steering" under the FHA. 455 U.S. 363, 373 (1982). The plaintiffs in *Havens* consisted of a black individual who attempted to rent an apartment from the defendant but was told none were available, a white person and a black person who were testers, and an organizational plaintiff that promoted equal opportunity housing policies and provided counseling regarding same. *Id.* at 368. The individual testers approached the defendant's apartment leasing offices to inquire about renting apartments even though they did not intend to lease an apartment. *Id.* The black tester was told there were no apartments available, while the white tester was told on the same day that there was availability. *Id.* At issue before the Supreme Court was whether the plaintiffs had Article III standing as 'testers' and whether they sustained a concrete injury in fact. *Id.* at 373. The Court held that because the FHA specifically prohibited providing false information in the context of leasing to the public, a tester who had been the victim of an unlawful misrepresentation under the FHA "has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." *Id.* at 373–74. This applied to the black tester because he was the object of the misrepresentation. <u>However, the Court found that the white tester was not the object of a misrepresentation because she made no allegation that defendant misrepresented to him that units were unavailable</u>. *Id.* (emphasis added). To the contrary, the white tester alleged that on each occasion that she inquired she was informed that apartments were available. *Id.* As such, the Court found that the white tester had alleged no injury to his statutory right under the FHA to accurate information concerning the availability of

housing. *Id.* The organizational plaintiff was found to have standing because the false information provided caused an injury in fact to its housing counseling services. *Id.*

The *Havens* decision does not stand for the proposition that all "tester" plaintiffs automatically have standing under the FHA. Rather, the Court held in *Havens* that the white "tester" plaintiff had not suffered an injury in fact despite the defendant providing false information, on the same day and as part of their coordinated testing operation, to the other tester in violation of the FHA and despite the clear evidence of the defendant's racial steering. Further, the injury in fact was suffered by the black plaintiff at the exact moment he was subjected to the misrepresentation, irrespective of whether he intended to lease an apartment or not. In other words, he suffered an individualized and concrete injury at that moment.

Defendants do not contend that it is necessary for the Court to determine whether Plaintiff is actually a "tester." Rather, Defendants seek to emphasize that a plain reading of Plaintiff's Second Amended Complaint reveals that she does not seek redress of any concrete and particularized injury she has allegedly sustained. Instead, Plaintiff's Second Amended Complaint sets forth that Plaintiff is a champion of disabled individuals, and the Second Amended Complaint reveals an intention to attempt to enforce the regulations of the FHA for others and not to seek judicial redress for any particularized injury in fact. For example, Plaintiff alleges in her Second Amended Complaint that "[a]s a handicapped individual and advocate for same, Plaintiff is concerned whether apartments are accessible and usable for people with disabilities." (Doc. 38, ¶ 34). The alleged FHA violations will interfere with "residents associating with disabled persons . . ." (Doc. 38, ¶ 34). And without an injunction, Plaintiff alleges that the barriers ". . . will exist in perpetuity at the Property" (Doc. 38, ¶ 34).

11

In the case at hand, even assuming there are accessibility barriers at the Property, which Defendants deny, the very existence of alleged accessibility barriers does not automatically result in an injury in fact to Plaintiff. For example, if Plaintiff had visited a friend's unit at the Property that had a light switch or power outlet that was not at the correct height under the FHA, but the Plaintiff never intended to, and never actually attempted to, use them, has she sustained an injury in fact? Defendants submit that under this example, there is no injury in fact. Plaintiff's allegations in her Second Amended Complaint are directly analogous to this example in that there are listings of alleged FHA accessibility issues but no facts setting forth any injury in fact or how such was caused by the alleged accessibility barriers. Contrary to how the false information caused harm and injury in fact to the black tester plaintiff when it was conveyed to him in *Havens*, in the case at hand, Plaintiff must allege more than the mere existence of accessibility barriers at the Property and must allege more than a conclusory allegation that she was "injured," which does not satisfy the requirement to plead a concrete and particularized injury in fact under Article III. Plaintiff's Second Amended Complaint is built on nothing more than the contention that she is a disabled individual who opposes discrimination in the form of allegedly inaccessible new multifamily residential properties.

Even if this Court were to find that Plaintiff arguably alleged that she was looking at apartment housing rental options for a possible future move and was deterred because of alleged accessibility barriers, such allegations of a possible future injury are insufficient to establish standing. *Lujan*, 504 U.S. at 564 ("'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require").

### B. Plaintiff Lacks Standing to Bring Suit to Enforce the Provisions of the FHA on Behalf of Others.

Plaintiff's status as a "tester" who seeks to enforce provisions of the FHA on behalf of others is evident from the factual allegations in her Second Amended Complaint. Plaintiff alleges that "private enforcement benefits not only those against whom discrimination is directed, but other residents." (Doc. 38, ¶ 21). Plaintiff alleges that she is concerned about "whether apartments are accessible and usable for people with disabilities." (Doc. 38, ¶ 34). Plaintiff also alleges that "the barriers at the Property will interfere with residents associating with disabled persons who encounter the barriers at the Property." (Doc. 38, ¶ 35). Finally, the Plaintiff alleges that "it is inevitable that disabled persons visiting the Property will encounter them thereby causing them the very injuries sought to be prevented by the FHA's design and construction requirements." (Doc. 38, ¶ 36).

Notably, Plaintiff has filed five (5) other lawsuits in this Court over the last fifteen (15) months pertaining to other new multifamily housing developments with nearly identical allegations in each of her "boilerplate" complaints.[1] Plaintiff claims she has visited each of these new multifamily housing projects with the intent to rent a unit and "encountered" alleged accessibility barriers that deterred her from each of the properties. Similar to Plaintiff's addition of over sixty (60) newly "observed" violations in the Second Amended Complaint, Plaintiff has routinely filed amended complaints in each of these other lawsuits in which she alleges she "observed" new violations without ever returning the subject property. This *modus operandi* is

---

[1] *Burnett v. HHHunt Property Management Tennessee, LLC et al.*, No. 3:2024-cv-00873 (M.D. Tenn. July 19, 2024); *Burnett v. Rutledge Flats, LLC et al.*, No. 3:2024-cv-00962 (M.D. Tenn. Aug. 7, 2024); *Burnett v. MCREF IV Gulch Apartments Owner, LLC et al.*, No. 3:2024-cv-00997 (M.D. Tenn. Aug. 16, 2024); *Burnett v. Parachute 1009, LP et al.*, No. 3:2025-cv-00415 (M.D. Tenn. Apr. 14, 2025); *Burnett v. 1111 Church Street Ground Owner, LLC et al.*, No. 3:2025-cv-00500 (M.D. Tenn. May 2, 2025).

13

precisely the reason why this Court must closely scrutinize whether Plaintiff has established the requisite Article III standing necessary to maintain this action.

If a court were to consider materials outside of the pleadings at the motion to dismiss stage, it would ordinarily convert a motion to dismiss to a motion for summary judgment. *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012). However, it is well-settled that a court may take judicial notice of other proceedings "not for the truth of the facts recited therein, but for the existence of the [suits]." *Wershe v. City of Detroit, Mich.*, 112 F.4th 357, 373 (6th Cir. 2024). Thus, it is proper for the Court to consider the five (5) other identical suits filed by Plaintiff in this Court within the past fifteen (15) months. It is evident from the face of the Second Amended Complaint (and the numerous other nearly identical suits Plaintiff has filed) that Plaintiff confuses the FHA's private right of action with a non-existent but expansive right to act as a private attorney general to investigate and enforce the terms and provisions of the FHA, which clearly Congress has not conferred.

Plaintiff does not bring the Second Amended Complaint to address any specific concrete and particularized injury that she allegedly sustained, but rather in an attempt to investigate new multifamily developments and attempt to privately enforce the regulatory provisions of the FHA on behalf of disabled persons generally. However, the Supreme Court has explicitly rejected the concept of a plaintiff bringing suit to enforce the rights of others as a basis for Article III standing. *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 393 (2024) (finding that the plaintiffs sought to challenge the FDA's regulation of others, not themselves, which did not constitute Constitutional standing). Under the well-established standard in *Alliance*, a party may not bring a cause of action on behalf of others without an injury to himself. *Id.* at 380. For example, citizens have no standing to sue to challenge a government regulation "merely because

their legal objection is accompanied by a strong moral, ideological, or policy objection to a government action." *Id.* at 381.

In *TransUnion LLC v. Ramirez*, the Supreme Court succinctly illustrated the difference between a plaintiff who has Article III standing and one who does not because she has not sustained an actual, individualized injury as follows:

> To appreciate how the Article III 'concrete harm" principle operates in practice, consider two different hypothetical plaintiffs. Suppose first that a Maine citizen's land is polluted by a nearby factor. She sues the company, alleging that it violated a federal environmental law and damaged her property. Suppose also that a second plaintiff in Hawaii files a federal lawsuit alleging that the same company in Maine violated that same environmental law by polluting land in Maine. The violation did not personally harm the plaintiff in Hawaii.
>
> Even if Congress affords both hypothetical plaintiffs a cause of action (with statutory damages available) to sue over the defendant's legal violation, Article III standing doctrine sharply distinguishes between those two scenarios. The first lawsuit may of course proceed in federal court because the plaintiff has suffered concrete harm to her property. But the second lawsuit may not proceed because that plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts. An uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's "compliance with regulatory law" (and, of course, to obtain some money via the statutory damages).

594 U.S. 413 427–28.

Plaintiff's Second Amended Complaint is clearly an attempt to act on behalf of others to police alleged violations of the FHA which she claims may impact others. Plaintiff's Second Amended Complaint simply fails to meet the pleading requirements necessary to establish any Constitutionally required standing.

## III.
## CONCLUSION

For the reasons set forth herein, Defendants respectfully move this Court to dismiss Plaintiff's Second Amended Complaint in its entirety, with prejudice, and without leave to amend.

15

Respectfully submitted,

**EVANS PETREE PC**

/s/ John D. Willet
John D. Willet          (TN Bar No. 18958)
Brian L. Yoakum         (TN Bar No. 24811)
1715 Aaron Brenner Drive, Suite 800
Memphis, Tennessee 38120
(901) 525-6781
jwillet@evanspetree.com
byoakum@evanspetree.com
*Attorneys for Defendants Bell Road Apartment Partners, LLC and 2nd Wave Development, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December 2025 the foregoing was served via the Court's ECF system upon the following counsel of record:

Rebecca Hutto
Wampler, Carroll, Wilson & Sanderson, PLLC
208 Adams Avenue
Memphis, Tennessee 38103
rebecca@wcwslaw.com
Attorney for Plaintiff

Vic. L. McConnell
Smith, Cashion & Orr, PLC
3100 West End Avenue, Suite 800
Nashville, Tennessee 37203
vmcconnell@smithcashion.com
Attorney for Humphrey's & Partners Architects, Inc.

Shannon Marie Renne
Smith, Cashion & Orr, PLC
3100 West End Avenue, Suite 800
Nashville, Tennessee 37203
srenne@smithcashion.com
Attorney for BACAR Constructors, Inc.

/s/ John D. Willet
Certifying Attorney